UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | | |
|---|---|---|
| DONNA L. WICKLIFF-FLOWERS, | ) | Case No. C08-360-TSZ-JPD |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| MICHAEL J. ASTRUE, Commissioner, Social Security Administration, | ) | |
| Defendant. | ) | |
| _____ | ) | |

Plaintiff Donna Wickliff-Flowers appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") which denied her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-33 and 1381-83f, after a hearing before an administrative law judge ("ALJ"). For the reasons set forth below, the Court recommends that the Commissioner's decision be AFFIRMED and this case be DISMISSED with prejudice.

I. FACTS AND PROCEDURAL HISTORY

Plaintiff is a thirty-eight year old woman with a high school diploma and some college education. Administrative Record ("AR") at 276, 298. Her past work experience includes employment in the U.S. Navy and as an avionics technician at Boeing. AR at 276,

72. Plaintiff asserts that she is disabled due to panic disorder with agoraphobia and depression. AR at 25. She asserts and onset date of September 25, 2004. AR at 23.

The Commissioner denied plaintiff's claim initially and on reconsideration. AR at 23. Plaintiff requested a hearing, which took place on February 20, 2007. AR at 286-326. On March 29, 2007, the ALJ issued a decision finding plaintiff not disabled and denied benefits based on his finding that plaintiff could perform a specific job existing in significant numbers in the national economy. AR at 23-35.

Plaintiff's administrative appeal of the ALJ's decision was denied by the Appeals Council on October 11, 2007, AR at 9-11, making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g). Plaintiff timely filed the present action challenging the Commissioner's decision. Dkt. No. 1.

## II. JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## III. STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 201 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir.

2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id*. at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

## IV. EVALUATING DISABILITY

As the claimant, Ms. Wickliff-Flowers bears the burden of proving that she is disabled within the meaning of the Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if her impairments are of such severity that she is unable to do her previous work, and cannot, considering her age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof during steps one through four. At step five, the burden shifts to the Commissioner. *Id.* If a claimant is found to be disabled

at any step in the sequence, the inquiry ends without the need to consider subsequent steps.

Step one asks whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b).[1] If she is, disability benefits are denied. If she is not, the Commissioner proceeds to step two. At step two, the claimant must establish that she has one or more medically severe impairments, or combination of impairments, that limit her physical or mental ability to do basic work activities. If the claimant does not have such impairments, she is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled. *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether she can still perform that work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is able to perform her past relevant work, she is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100. If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

---

[1] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit. 20 C.F.R. § 404.1572.

## V. DECISION BELOW

On March 29, 2007, the ALJ issued a decision finding the following:

1. The claimant met the insured status requirements of the Social Security Act through December 31, 2005.

2. The claimant has not engaged in substantial gainful activity since September 25, 2004, the alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq*., 416.920(b) and 416.971 *et seq*.).

3. The claimant has the following severe impairments: degenerative disc disease, panic disorder with agoraphobia, and depression (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, I find that the claimant has the physical residual functional capacity to perform work at the light exertional level; specifically, to lift and/or carry 20 pounds occasionally and 10 pounds frequently, to stand and/or walk (with normal breaks) for a total of about six hours in an eight-hour workday, and to sit (with normal breaks) for a total of about six hours in an eight-hour workday, and to sit (with normal breaks) for a total of about six hours in an eight-hour workday. The claimant can occasionally climb ramps, stairs, ladders, ropes, and scaffolds, and occasionally balance, stoop, kneel, crouch, and crawl. She should avoid concentrated exposure to hazards. The claimant can adequately perform the mental activities generally required by competitive, remunerative, unskilled work as follows: can understand, remember, and carry out simple instructions; can make judgments commensurate with the functions of unskilled work, i.e., simple work-related decisions; can respond appropriately to supervision, co-workers, and usual work situations; and, can deal with changes in a routine work setting not dealing with the general public.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on October 18, 1971 and was 32 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not

|   |   |   |
|---|---|---|
| 01 |   | the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2). |
| 02 | 10. | Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966). |
| 03 |
| 04 |
| 05 | 11. | The claimant has not been under a disability, as defined in the Social Security Act, from September 25, 2004 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)). |
| 06 |

AR at 25-35.

## VI. ISSUES ON APPEAL

The principal issues on appeal are:

1. Did the ALJ properly consider the findings of the state agency medical consultants?

2. Did the ALJ provide sufficient reasons for rejecting the opinion of examining psychiatrist Richard Price, M.D.?

3. Did the ALJ provide clear and convincing reasons for rejecting the plaintiff's testimony?

Dkt. No. 10 at 1-2.

## VII. DISCUSSION

The plaintiff stipulated to the ALJ's physical residual functional capacity assessment. AR at 294, Dkt. No. 10 at 4. The issues involved therefore relate to the ALJ's evaluation of the plaintiff's limitations caused by her alleged mental impairments. Here, plaintiff challenges the evaluation of medical opinions given by a State medical agency consultant, a non-treating, non-examining medical source, and the opinion of Dr. Price, an examining physician.

A. <u>Standards for Review of Medical Evidence</u>

As a matter of law, more weight is given to a treating physician's opinion than to that of a nontreating physician because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Magallanes*, 881 F.2d at 751; *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). A treating physician's opinion,

REPORT AND RECOMMENDATION
PAGE – 6

however, is not necessarily conclusive as to either a physical condition or the ultimate issue of disability, and can be rejected, whether or not that opinion is contradicted. *Magallanes*, 881 F.2d at 751. If an ALJ rejects the opinion of a treating or examining physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not contradicted by other evidence, and specific and legitimate reasons if it is. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1988). "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citing *Magallanes*, 881 F.2d at 751). The ALJ must do more than merely state his conclusions. "He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.* (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). Such conclusions must at all times be supported by substantial evidence. *Reddick*, 157 F.3d at 725.

The opinions of examining physicians are to be given more weight than non-examining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Like treating physicians, the uncontradicted opinions of examining physicians may not be rejected without clear and convincing evidence. *Id.* An ALJ may reject the controverted opinions of an examining physician only by providing specific and legitimate reasons that are supported by the record. *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).

Opinions from non-examining medical sources are to be given less weight than treating or examining doctors. *Lester*, 81 F.3d at 831. However, an ALJ must always evaluate the opinion of such a source and may not simply ignore them. In other words, an ALJ must evaluate the opinion of a non-examining source and explain the weight given to it. SSR 96-6p 1996 WL 374180, at *2 (S.S.A.). Although an ALJ generally gives more weight to an examining doctor's opinion than to a non-examining doctor's opinion, a non-examining doctor's opinion may nonetheless constitute substantial evidence if it is consistent with other independent evidence in the record. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002);

*accord Orn* at 495 F.3d 632-33.

B. <u>The ALJ Did Not Err in His Evaluation of the State Agency Medical Consultant Opinions</u>

In July 2005, William Lysak, Ph.D., a state agency medical consultant, opined:

A.) no limitations

B.) Clmt is able to understand and follow both simple and complex instructions. She would have difficulty performing complex tasks in a public setting or around large groups due to anxiety.

C.) The clmt is able to accept supervision and interact w/small groups of co-workers. She is not able to sustain interaction w/ the public or large groups.

D.) Adaptive skills are intact.

The clmt's allegation of a psych. impairment is credible, but sx are not so severe as to preclude completion of tasks in a non-public setting. Examiner opines clmt is not able to accept supervision or interact w/ co-workers. However, medical records and clmt's reported adl's do not indicate this degree of limitation.

AR at 165.

In his opinion, the ALJ noted:

Regarding the claimant's mental impairments, State agency psychologist consultants reviewed the evidence in connection with the initial and reconsideration determinations and opined that claimant was not significantly limited in most functional areas. It was found that the claimant was able to understand and follow both simple and complex instructions, though she would have difficulty performing complex tasks in a public setting or around large groups due to anxiety. The State agency consultant opined that the claimant was able to accept supervision and interact with small groups of coworkers but could not sustain interaction with the public or with large groups. . . . I find that the State agency consultant's opinion, including the limitation to simple, repetitive work and not dealing with the general public, is consistent with the evidence of record.

AR at 33.

The plaintiff argues that the ALJ failed to include the limitation of working only in small groups. Dkt No. 10 at 10. Plaintiff is correct in pointing out that the ALJ did not include the limitation related to small groups of co-workers; however, this omission would not alter the ALJ's ultimate determination that plaintiff was not disabled under the Act

REPORT AND RECOMMENDATION
PAGE – 8

because the jobs identified by the Vocational Expert ("VE") did not require interaction with others.

In response to a hypothetical, the VE opined the hypothetical claimant with the plaintiff's RFC could perform work as a folder or hotel/motel housekeeper. AR at 321-22. The VE testified that these jobs did not require interaction with co-workers on a regular basis. AR at 324. The VE's testimony was also consistent with the description of these jobs in the *Dictionary of Occupational Titles* (DOT), U.S. Dep't of Labor (4th ed. 1991). According to the DOT, neither position requires interacting with people or talking as a significant job function. DOT §§ 369.687-018 (Folder), 323.687-014 (Cleaner Housekeeping). Furthermore, the DOT descriptions of these jobs suggest that this work is typically performed singularly, not in groups. *Id*. Although the ALJ did not specifically include the limitation related to small groups of coworkers, this omission was harmless error because it was nonprejudicial to the claimant and irrelevant to the ALJ's ultimate disability conclusion. *Stout v. Commissioner*, 454 F.3d 1050, 1055 (9th Cir. 2006).

    C.    <u>The ALJ Did Not Err in His Evaluation of Dr. Price's Opinions</u>

In June 2005, the plaintiff was examined by psychiatrist Richard Price, M.D. He diagnosed her with panic disorder with agoraphobia, assessed a GAF score of 45-50 and concluded that:

> She is able to perform simple and repetitive tasks as well as detailed and complex tasks at this time. At this time, she is very socially isolated and would not be able to accept instructions from supervisors or interact with coworkers and the public. I do not believe she could perform work activities consistently or maintain regular attendance in the workplace. I do not believe she would be able to complete a normal workday/workweek without interruptions from her psychiatric condition.

AR at 202.

The ALJ rejected the conclusions of Dr. Price, preferring the opinions of the State medical agency consultants. He concluded that the plaintiff's limitations as found by Dr. Price were not supported, both due to inconsistencies in his report and the record as a whole.

AR at 33.

The conclusions of the ALJ are supported by substantial evidence in the record. The ALJ conducted a thorough review of the medical evidence in the case. He noted, for example, instances in which the plaintiff's treating orthopedist described the plaintiff's mental health status as normal and that her primary care physician stated that her depression was situational and that she was managing it without medication. AR at 205, 215. These reports took place about one month prior to the time she was evaluated by Dr. Price. The ALJ also noted that just five months after Dr. Price conducted his evaluation, plaintiff obtained normal scores on a Mini-Mental status examination, answering 31 questions correctly out of 31 questions asked, despite claims of memory difficulties, fatigue, and anxiety. AR at 31.

The ALJ also concluded that the plaintiff did not receive treatment of the type or duration that would be expected of an individual suffering from a debilitating condition. AR at 32. The plaintiff sought mental health help only sporadically. The ALJ also noted that while Dr. Price concluded the plaintiff could not get along with authority figures, the plaintiff was able to attend school until her automobile accident. AR at 33.

The role of this Court is limited. As noted above, it is the duty of the ALJ to resolve conflicts in medical testimony and other ambiguities that might exist. *Andrews*, 53 F.3d at 1039. When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Thomas*, 278 F.3d at 954. While it is possible to review the medical evidence and reach the conclusion urged by the plaintiff, this is not the only rational interpretation of the evidence. The ALJ did not err is his evaluation of the medical evidence.

D. <u>The ALJ Did Not Err in Making an Adverse Credibility Assessment</u>

Credibility determinations are particularly within the province of the ALJ. *Andrews*, 53 F.3d at 1043. Nevertheless, when an ALJ discredits a claimant's subjective symptom

testimony, he must articulate specific and adequate reasons for doing so. *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006). The determination of whether to accept a claimant's subjective symptom testimony requires a two-step analysis. 20 C.F.R. §§ 404.1529, 416.929; *Smolen*, 80 F.3d at 1281; SSR 96-7p, 1996 WL 374186, *2-3. First, the ALJ must determine whether there is a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms. 20 C.F.R. §§ 404.1529(b), 416.929(b); *Smolen*, 80 F.3d at 1281-82; SSR 96-7p, 1996 WL 374186, *2-3. Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms solely because they are unsupported by objective medical evidence. *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc). Absent affirmative evidence that the claimant is malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony. *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at 722.

An ALJ is not "required to believe every allegation of disabling pain" or other non-exertional impairment. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). When evaluating a claimant's credibility, however, the ALJ "must specifically identify what testimony is not credible and what evidence undermines the claimant's complaints." *Greger*, 464 F.3d at 972 (internal quotation omitted). General findings are insufficient. *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at 722. The ALJ may consider "ordinary techniques of credibility evaluation," including the claimant's reputation for truthfulness, inconsistencies in testimony or between his testimony and conduct, daily activities, work record, and the testimony his from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains. *Smolen*, 80 F.3d at 1284.

Here, there are no allegations that plaintiff was malingering; therefore the ALJ was required to provide clear and convincing reasons for discounting his testimony. *Reddick*, 157 F.3d at 722. The ALJ did so. This fact, as well, supports the ALJ's evaluation of the medical

evidence, as much of the medical evidence in this case would be based on plaintiff's self-reports.

The ALJ determined type, frequency, duration, and timing of plaintiff's mental health treatment showed that her symptoms were not as severe as she alleged. The amount of treatment is "an important indicator of the intensity and persistence of [Plaintiff's] symptoms." 20 C.F.R.§§ 404.1529(c)(3), 416.929(c)(3). Lack of treatment for mental conditions is a legitimate credibility consideration. *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). Failure to report symptoms or limitations to treatment providers is also an appropriate credibility consideration. *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006). As discussed above, plaintiff only sporadically sought help for her mental health problems. Her treating physicians described her depression and anxiety as situational. Tr. 215-16.

Plaintiff cites *Nguyen v. Chater*, 100 F.3d 1463, 1465 (9th Cir. 1996) for the proposition that because depression is often underreported, due to the fact that many who do suffer from the disease do not seek treatment until late in the day, and this lateness is not a substantial basis upon which to reject otherwise sound medical opinions. Here, however, the plaintiff was aware that she had mental health problems. She sporadically sought treatment, and this is consistent with her physician's report that her depression and anxiety were situational. *Nguyen* requires an ALJ to take the issue of underreporting in mind when evaluating medical reports. However, *Nguyen* does not require an ALJ to disregard long-adopted standards for assessing credibility because the case involves depression.

The ALJ also cited plaintiff's failure to follow her doctor's medication recommendations as a reason to discount her credibility. Dr. Price recommended plaintiff undergo anti-depressant treatment and receive medication. However, plaintiff had been raped by her husband when previously taking Ambien. She expressed great concerns about her safety should she take medicine that included the side-effects of drowsiness, especially after she moved back in with her ex-husband. Notwithstanding her fears, however, she was

regularly using other prescribed narcotics to receive relief from pain, anxiety and sleeplessness. AR at 246-48, 251.

In June 2005, when plaintiff was evaluated by Dr. Price for possible disability benefits, she told him that she dropped out of college due to persistent anxiety and agoraphobia. However, she previously reported to her treating source that she dropped out due to back pain. AR at 199, 221. This inconsistency, too, is an appropriate basis upon which the ALJ could find plaintiff to be less than fully-credible.

The ALJ is tasked with the job of assessing credibility. His assessment is supported by substantial evidence.

## VIII. CONCLUSION

For the foregoing reasons, the Court recommends that the Commissioner's decision be AFFIRMED and that this case be DISMISSED with prejudice.

DATED this 4th day of December, 2008.

*James P. Donohue*

JAMES P. DONOHUE
United States Magistrate Judge